**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE | § | CASE NO. 19-11528 |
| | § | |
| CELLA III, LLC, | § | CHAPTER 11 |
| | § | |
| DEBTOR. | § | SECTION "A" |

**MEMORANDUM OPINION**

This Court held a virtual evidentiary hearing on November 10, 2020 (the "Hearing"), to consider *Girod LoanCo, LLC's Application for Allowance of Post-Petition Interest and Attorney's Fees as Oversecured Creditor Pursuant to 11 U.S.C. § 506(b)* (the "§ 506(b) Motion"), [ECF Doc. 209]; the response thereto filed by Cella III, LLC (the "Response"), [ECF Doc. 227]; and the reply brief (the "Reply"), [ECF Doc. 234], filed by Girod Loan Co LLC ("Girod") in support of the § 506(b) Motion. After considering the pleadings, the evidence presented at the Hearing, the record in this case, and applicable law, the Court GRANTS IN PART and DENIES IN PART the relief sought in the § 506(b) Motion. The Court finds that Girod became oversecured in January 2020, thus allowing post-petition interest to the extent described herein, but denies Girod's request for attorneys' fees and costs.

**JURISDICTION AND VENUE**

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334. The matters presently before the Court constitute core proceedings that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b)(2)(A), (B) & (O). The venue of the Debtor's chapter 11 case is proper under 28 U.S.C. §§ 1408 and 1409(a).

# FINDINGS OF FACT[1]

### A. Cella's Business and Capital Structure

Cella III, LLC (the "Debtor" or "Cella") is a Louisiana limited liability company with a sole member, George Cella. *See* Hr'g Tr. 63:12–22 (Sept. 18, 2020). The Debtor owns property located at 4531 and 4545 Veterans Boulevard in Metairie, Louisiana (the "Property"), on which sit three buildings. *See* Hr'g Tr. 67:8–19 (Sept. 18, 2020). The Debtor leases parts of the Property to a Hertz car rental business, a Smoothie King franchise, and to East Jefferson General Hospital ("EJGH") (or its successor),[2] and the Debtor operates a mini-storage and vault business in another part of the Property. *See* Response, ¶ 5–6; [ECF Doc. 160, at 11 (approved Disclosure Statement)]. The Debtor asserts that it consistently receives gross income of approximately $72,000 from the leases and its own business operations. *See* Response, § 5; [ECF Doc. 160, at 11].

In the years prior to Cella's decision to file for bankruptcy protection, First NBC Bank ("FNBC") held notes owed by Cella and affiliated companies, including Wild Horse of Old Military Road, LLC ("Wild Horse"). Those notes are secured *inter alia* by a mortgage on the Property and an assignment of rents therefrom, as well as by a mortgage on George Cella's personal residence. *See* Response, § 3; [ECF Doc. 160, at 7–8]. On Friday, April 28, 2017, the Louisiana Office of Financial Institutions closed FNBC and the Federal Deposit Insurance Corporation ("FDIC") was named Receiver. *See Failed Bank Information*, FED. DEPOSIT INS.

---

[1] These findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent that any of the following findings of fact are determined to be conclusions of law, they are adopted and shall be construed and deemed conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted and shall be construed and deemed as findings of fact.

[2] LCMC Health, a New Orleans-based, non-profit health system, recently acquired East Jefferson General Hospital on October 1, 2020, and knowledge of that acquisition is in the public domain. *See, e.g.*, *LCMC Health's Acquisition of East Jefferson General Hospital Finalized*, LCMC HEALTH BLOG (Oct. 1, 2020), http://www.lcmchealth.org/blog/2020/lcmc-healths-acquisition-of-east-jefferson-gener/.

CORP., https://www.fdic.gov/resources/resolutions/bank-failures/failed-bank-list/firstnbc.html (last visited Dec. 30, 2020). Thereafter in 2017, Girod acquired Cella's notes, as well as other notes owed by Cella affiliates, from the FDIC. *See* Response, ¶ 3.

In January 2019, Girod made demand for payment on Wild Horse's matured note secured by George Cella's home. In March 2019, Girod then notified Cella that its notes were in default and the indebtedness accelerated as a result of Wild Horse's default, claiming that Girod's interest in Cella's assets was cross-collateralized with notes and other security interests owed to Girod by Cella affiliates and George Cella, *See* Response, ¶ 7; [ECF Doc. 160, at 7–8]. On May 24, 2019, Girod commenced a foreclosure action in a Louisiana state court against Cella, seeking, in part, to foreclose on the Property. *See* Response, ¶ 7; [Adv. No. 19-1129, ECF Doc. 1, ¶ 21].

### B. The Debtor's Bankruptcy and Post-Petition Activity

On June 5, 2019, the Debtor filed for bankruptcy relief under chapter 11 of the Bankruptcy Code, which stayed Girod's foreclosure action. [ECF Doc. 1]. The Debtor continues to operate its business as a debtor-in-possession, and no committee has been constituted.

On June 14, 2019, the Debtor filed a *Motion for Interim and Final Orders: (i) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363, (ii) Granting Adequate Protection of Prepetition Secured Party Pursuant to 11 U.S.C. §§ 361, 362 and 363, and (iii) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001(b)* (the "Cash Collateral Motion"). [ECF Doc. 12]. Through the Cash Collateral Motion, the Debtor sought to use Girod's cash collateral to pay for the Debtor's operations, an insider's salary, and professional fees pursuant to an attached budget. [ECF Doc. 12, ¶¶ 15–16 & Ex. A]. Assuming that Girod held a claim against the estate for $7.76 million, the Debtor pointed to a 2012 appraisal valuing the Property at $10.1 million to assert that "Girod enjoys a comfortable equity cushion in its collateral." [ECF Doc. 12, ¶ 14]. The Debtor

3

offered post-petition replacement liens in the Property and proceeds, however, to the extent that payment of adequate protection was required. [ECF Doc. 12, ¶ 21].

At the interim hearing on the Cash Collateral Motion, counsel for the Debtor announced that an agreement for adequate protection had been reached between the Debtor and Girod, whereby the Debtor would pay three monthly payments of $20,000 in adequate protection to Girod beginning in July 2019, until a final hearing on the matter could be held in September. Hr'g Tr. Min.14:19:08–:24 (June 20, 2019). The Court issued an Order approving the Cash Collateral Motion on an interim basis, reflecting that agreement. [ECF Doc. 27].

At the final hearing on September 4, 2019, the Debtor represented to the Court that Girod enjoys an "enormous" equity cushion as the value of the Property exceeds $10 million and Girod's secured claim was "at most" $8 million. Hr'g Tr. Min. 17:04:25–08:06 (Sept. 4, 2019). The parties stipulated to the Property's value of $10.1 million for the sole purpose of resolving the Cash Collateral Motion. Hr'g Tr. Min. 15:32:58; 17:08:06 (Sept. 4, 2019). Accordingly, The Court issued an Order on September 12, 2019, that modified its Interim Order to remove the requirement to pay adequate protection for the month of September 2019 and declined to require the Debtor to make adequate protection payments going forward. [ECF Doc. 72]. That Order reserved the Debtor's right to challenge the extent, validity, and priority of Girod's security interest or assert claims against Girod under any other theory of liability, as well as Girod's right to seek adequate protection at a later time or seek an Order entitling it to post-petition interest and attorneys' fees under § 506 of the Bankruptcy Code. [ECF Doc. 72].

Shortly before, on August 21, 2019, Girod filed Proof of Claim No. 4 against the Cella estate, asserting a secured claim in the amount of $7,999,333.72. On September 4, 2019, Cella initiated an adversary proceeding against Girod, alleging a claim under the Louisiana Unfair Trade

4

Practices Act, as well as claims for forfeiture of usurious interest, wrongful seizure, breach of contract, redemption of litigious rights, and avoidance under § 547 of the Bankruptcy Code, among others. [Adv. No. 19-1129, ECF Doc. 1]. The parties eventually stipulated that Girod would not seek prepetition default interest, but, after a trial on Cella's remaining claims, the Court dismissed the entirety of Cella's Complaint. [ECF Doc. 154, ¶ 49; Adv. No. 19-1129, ECF Doc. 58, 62 & 64]. On May 15, 2020, Girod amended its proof of claim to reduce its asserted secured claim to $7,750,751.42, removing approximately $248,000 in prepetition default interest. *See* Proof of Claim 4-2. The Debtor does not dispute that Girod's claim is $7,750,751.42 as of June 5, 2019, the Petition Date. *See* Response, ¶ 1.

### C. The Evidentiary Hearing on the § 506(b) Motion

On November 10, 2020, this Court held the Hearing to consider Girod's § 506(b) Motion. The Court considered documentary evidence and heard testimony from Michael Truax, the Debtor's appraiser of the Property; Denis Stratford, a representative of Girod; George Cella, the principal of the Debtor; and Robert Foley, an expert who provided testimony regarding costs of renovating the Property.

Mr. Truax authenticated and provided testimony regarding his expert report, valuing the property at $7,695,000 as of January 20, 2020. *See* Hr'g Tr. Min. 13:43:04–:54 (Nov. 10, 2020). Girod stipulates to that value for the Property—as a "starting point." *See* § 506(b) Motion, § 3 & Ex. A; Reply, at 1. Mr. Truax testified that he valued the property using an income-capitalization approach, a type of real estate appraisal method whereby he valued the Property through the lens of a hypothetical investor based on the income the Property generates. *See* Hr'g Tr. Min. 13:42:13–:58 (Nov. 10, 2020). Mr. Truax did not incorporate a value for the current lease with EJGH into his appraisal; rather, he assumed for valuation purposes that EJGH would not be in the

space, that the space would be vacant for months, and that a landlord would incur costs for placing a new tenant. *See* Hr'g Tr. Min. 13:46:31–14:00:49 (Nov. 10, 2020). He factored a lower rental fee per square footage than the rate EJGH is paying now. *Id.*

Girod asserts that the valuation would be higher if Mr. Truax factored the EJGH lease in his analysis because EJGH is locked into higher lease payments than a new tenant would pay in the current economic climate. [ECF Doc. 234, at 2]. But the testimony revealed that countervailing factors exist to justify the lower appraised estimate even if EJGH's higher rents were accounted for, including the pandemic's general, negative effect on the economy and the fact that one of the other tenants on the Property has filed for bankruptcy protection and missed several months of rental payments so far, and there is some uncertainty as to whether that lessee's lease will be assumed in its bankruptcy case. *See* Hr'g Tr. Min. 14:34:27–38:47 (Nov. 10, 2020). Therefore, the Court accepts Mr. Truax's value of the Property at $7,695,000 and declines to adjust that value to account for the difference between EJGH's $41.25 per square foot rental rate and the $25 per square foot rate used by Mr. Truax to calculate his estimate. Neither party presented any further evidence regarding the value of the Property between the Petition Date and January 20, 2020.[3]

Further, on December 29, 2020, this Court found that EJGH had not breached its obligations under the lease at this time as asserted by the Debtor. [Adv. No. 19-11528, ECF Doc. 168]. Therefore, the testimony presented at the Hearing in this matter regarding whether proceeds resulting from any judgment against EJGH constitutes Girod's cash collateral is rendered moot.

---

[3] In September 2019, at the final hearing on the Debtor's Cash Collateral Motion, the Debtor asserted that Girod's claim was oversecured and, therefore, Girod was not entitled to further adequate protection payments. The parties stipulated to a value of $10.1 million for the Property solely for the purpose of resolving the Cash Collateral Motion. Because that stipulation was limited to the resolution of the Cash Collateral Motion, the Court will not factor that value into its analysis here.

Finally, the Court disregards any testimony regarding early termination fees that EJGH would be required to pay should it elect to terminate the lease early, as such an event is too speculative to assess its value. Likewise, the Court finds unhelpful any testimony regarding construction costs to renovate the Property in the event EJGH terminates its lease. *See, e.g.*, *In re Old Colony, LLC*, 476 B.R. 1, 12–15 (Bankr. D. Mass. 2012) (declining to accept valuation dependent on possible occurrence of speculative events).

At the close of testimony, this Court took the matter under submission.

## CONCLUSIONS OF LAW

### A. Girod Is Entitled to Post-Petition Interest Under § 506(b)

Section 506 of the Bankruptcy Code provides that "[t]o the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement . . . ." 11 U.S.C. § 506(b). An award of post-petition interest is "to be paid only out of the 'security cushion.'" *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 372 (1988). "[Section] 506(b) applies only from the date of filing through the confirmation date." *Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 797 (5th Cir. 1997) (citing *Rake v. Wade*, 508 U.S. 464, 468 (1993), *overruled on other grounds by* 11 U.S.C. § 1332(e)); *see also In re Smith*, 594 B.R. 376, 382 (Bankr. W.D. La. 2018) ("It is settled law in the Fifth Circuit that an oversecured creditor is entitled to the allowance of contract interest rates during the pendency of the bankruptcy case from the petition date until the effective date of the plan."); *In re SJT Ventures, LLC*, 441 B.R. 248, 252 (Bankr. N.D. Tex. 2010) ("[T]he allowance of contract interest rates to apply to so-called 'pendency interest,' which is interest that accrues after filing of petition but prior

7

to reorganization plan's effective date, is settled law in the Fifth Circuit."). If a creditor is entitled to post-petition interest under § 506(b), "[s]uch interest becomes part of the creditor's allowed claim." *Key Bank of N.Y. v. Harko (In re Harko)*, 211 B.R. 116, 119 (2d Cir. B.A.P. 1997).

"[T]he value of a debtor's collateral and the amount of a creditor's claim are among the most important issues between the debtor and the secured claimholder." *In re T-H New Orleans Ltd. P'ship*, 116 F.3d at 797. To determine whether a creditor is entitled to post-petition interest and reasonable fees under § 506(b), the Court must examine those two values. *See id*. But "[n]either Bankruptcy Code § 506(b) nor the Bankruptcy Rule define or establish the time for determining valuation of collateral for purposes of § 506(b)." *Id*. at 798. The Fifth Circuit, however, has instructed that the valuation of a secured creditor's collateral under § 506 of the Code is flexible and not limited to a single point in time. *See id*. "The creditor though bears the ultimate burden to prove by a preponderance of the evidence its entitlement to postpetition interest, that is, that its claim was oversecured, to what extent, and for what period of time." *Id*.

"A secured creditor's entitlement to accrue interest under § 506(b) matures at that point in time where the creditor's claim becomes oversecured" even though "accrued interest under § 506(b) is not paid to an oversecured creditor until the plan's confirmation or its effective date, whichever is later." *Id*. at 799 (citing *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assoc., Ltd. (In re Timbers of Inwood Forest Assoc., Ltd.)*, 793 F.2d 1380, 1381, 1407 (5th Cir. 1986), *on reh'g*, 808 F.2d 363 (5th Cir. 1987 (en banc court reinstating panel opinion)), *aff'd*, 484 U.S. 365 (1988)).

But the Property is not the only collateral securing repayment of the debt owed to Girod. *See In re Geijsel*, 480 B.R. 238, 262–63 (Bankr. S.D. Tex. 2012) (including cash accumulated through the Debtor's operations in valuing the creditor's collateral). Mr. Truax valued only the

8

Property and did not consider the Debtor's cash on hand in his appraisal. *See* § 506(b) Motion, Ex. A. The Debtor does not dispute that Girod's collateral includes the cash generated post-petition by the Debtor's operations. [ECF Docs. 12 (requesting to use Girod's cash collateral for operations) & 281 (requesting to use Girod's cash collateral to pay expert fees)]. As of the Petition Date, the Debtor's cash-on-hand totaled $1,298.00. [ECF Doc. 77 (Aug. 2019 Monthly Operating Report "MOR"), at 3]. As of January 31, 2020, the Debtor's accumulated cash totaled $130,200. [ECF Doc. 157, at 3 (Jan. 2020 MOR)]. As of November 30, 2020, the latest available MOR to date, the Debtor's accumulated cash totaled $385,492. [ECF Doc. 309, at 3 (Nov. 2020 MOR)]. After crediting Girod's claim in the amount of $40,000 (representing the only two adequate protection payments made by the Debtor over the course of this case), *see In re Geijsel*, 480 B.R. at 265–68, and as shown by **Exhibit 1** attached to this Memorandum Opinion, this Court finds that Girod became oversecured in January 2020 and remained oversecured during the months of the case thereafter, enjoying an equity cushion of between approximately $115,000 in January 2020 and $369,000 as of November 2020.

Thus, the Court finds that Girod has met its burden to show it is entitled to post-petition interest pursuant to § 506(b). The Court finds that Girod is entitled to accrue non-default interest starting in January 2020, the point in time when Girod became oversecured, and continuing through a plan's confirmation or its effective date, whichever is later, to be calculated per the terms of the loan documents. *See* Proof of Claim 4-2, Ex. 2. But "the post-petition interest and/or attorneys' fees cannot exceed the value of the collateral." *In re Constr. Supervision Servs., Inc.*, No. 12-00569-8, 2015 WL 4873062, at *5 (Bankr. E.D.N.C. Aug. 13, 2015); *see also In re John Q. Hammons Fall 2006, LLC*, 612 B.R. 779, 783 (Bankr. D. Kan. 2020) (citing *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 372–73 (1988)). Even applying

a straightforward 5.5% rate on just the principal due on the three notes, the Court can infer that Girod's interest from January 2020 through December 2020 would be at least $33,000 per month, or $396,000.[4] That amount exceeds $369,740.58, the largest equity cushion that Girod has enjoyed thus far. *See* Ex. 1. Any accrued post-petition interest that exceeds $369,740.58 is disallowed because it is neither recoverable under § 506(b) nor § 502(b)(2). *See In re Croatan Surf Club*, LLC, No. 11-0194-8, 2012 WL 1906386, at *6 (Bankr. E.D.N.C. 2012) (citing, among other authorities, *In re Broomall*, 131 B.R. 32, 35 (Bankr. D. Md. 1991) (holding that once an equity cushion is eliminated, an oversecured creditor becomes undersecured and no longer entitled to a claim for accruing interest)). Like the situation in *In re Geijsel*, "[t]he point of the foregoing analysis is that, as of any proposed confirmation date . . . [Girod's] interests and fees absorb any cash 'cushion' the Debtor[] gained during the course of the bankruptcy proceedings."[5]

Based on its status as an oversecured creditor, Girod would also be entitled to reasonable attorneys' fees under § 506(b), chargeable from January 2020 through a plan's confirmation or its effective date, whichever is later. *See In re Geijsel*, 480 B.R. at 269 (interpreting *In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790 (5th Cir. 1997)). But after post-petition interest, no collateral

---

[4] The principal amounts due on the three notes are as follows: (i) account -10251 is $6,015,929.94; (ii) account -10252 is $1,626,749.94; and (iii) account -10253 is $47,854.81. *See* Proof of Claim 4-2.

[5] As noted by the *Geijsel* court and not unlike the situation here:

> [Valuation] is an imprecise science. The value of property at any point in time is, at best, based on an educated guess. Obviously, the value of "cash" collateral is an exception to this observation. But here the amount of cash, and hence its value, fluctuated monthly, if not weekly or daily. . . . The Court must, by necessity, have some flexibility in addressing the value of floating collateral. The collateral here could potentially float up and down again. Regardless of the Court ability to "pinpoint" a value for all purposes and relevant times, it can fairly conclude that [the creditor's] liens encumber the Debtors' cash and that, at any point in time, [the creditor's] claim is greater than the value of [the creditor's] collateral, or, with accrued interest and added fees, the claim exhausts the collateral value at all relevant times during the bankruptcy proceedings.

*In re Geijsel*, 480 B.R. at 269 n.25.

remains to secure such fees and, therefore, Girod is not eligible for post-petition attorneys' fees under § 506(b). "Section 506(b) provides a limited substantive right to post-petition fees," and "[i]f such fees are not allowed under that section, they do not morph into an allowable unsecured claim since there is no section of the Code other than 506(b), that permits allowance of post-petition fees." *In re Croatan Surf Club*, 2012 WL 1906386, at *6 (citations omitted).

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART *Girod LoanCo, LLC's Application for Allowance of Post-Petition Interest and Attorney's Fees as Oversecured Creditor Pursuant to 11 U.S.C. § 506(b)*, [ECF Doc. 209], finding that Girod is an oversecured creditor as of January 2020, allowing Girod post-petition interest to the extent described herein, and denying Girod's request for attorneys' fees and costs.

New Orleans, Louisiana, this 6th day of January 2020.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPCY JUDGE

**EXHIBIT 1**

| Month | Value of Property | Accumulated Cash at End of Month | Collateral Value at End of Month | Adequate Protection Payments | Claim Balance | Equity Cushion |
|---|---|---|---|---|---|---|
| June 2019 | | $1,298 | $1,298 | $0 | $7,750,751.42 | ($7,749,453.42) |
| July 2019 | | $17,054 | $17,054 | $20,000 | $7,730,751.42 | ($7,713,697.42) |
| Aug. 2019 | | $27,285 | $27,285 | $20,000 | $7,710,751.42 | ($7,683,466.42) |
| Sept. 2019 | | $85,575 | $85,575 | $0 | $7,710,751.42 | ($7,625,176.42) |
| Oct. 2019 | | $141,027 | $141,027 | $0 | $7,710,751.42 | ($7,569,724.42) |
| Nov. 2019 | | $123,347 | $123,347 | $0 | $7,710,751.42 | ($7,587,404.42) |
| Dec. 2019 | | $79,564 | $79,564 | $0 | $7,710,751.42 | ($7,631,187.42) |
| Jan. 2020 | $7,695,000 | $130,200 | $7,825,200 | $0 | $7,710,751.42 | $114,448.58 |
| Feb. 2020 | $7,695,000 | $179,190 | $7,874,190 | $0 | $7,710,751.42 | $163,438.58 |
| Mar. 2020 | $7,695,000 | $205,687 | $7,900,687 | $0 | $7,710,751.42 | $189,935.58 |
| Apr. 2020 | $7,695,000 | $166,549 | $7,861,549 | $0 | $7,710,751.42 | $150,797.58 |
| May 2020 | $7,695,000 | $204,918 | $7,899,918 | $0 | $7,710,751.42 | $189,166.58 |
| June 2020 | $7,695,000 | $260,971 | $7,955,971 | $0 | $7,710,751.42 | $245,219.58 |
| July 2020 | $7,695,000 | $327,564 | $8,022,564 | $0 | $7,710,751.42 | $311,812.58 |
| Aug. 2020 | $7,695,000 | $370,107 | $8,065,107 | $0 | $7,710,751.42 | $354,355.58 |
| Sept. 2020 | $7,695,000 | $276,430 | $7,971,430 | $0 | $7,710,751.42 | $260,678.58 |
| Oct. 2020 | $7,695,000 | $329,997 | $8,024,997 | $0 | $7,710,751.42 | $314,245.58 |
| Nov. 2020 | $7,695,000 | $385,492 | $8,080,492 | $0 | $7,710,751.42 | $369,740.58 |