**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **IN RE** | § | **CASE NO. 19-11528** |
| | § | |
| **CELLA III, LLC,** | § | **CHAPTER 11** |
| | § | |
| **DEBTOR.** | § | **SECTION "A"** |

## MEMORANDUM OPINION

Before the Court is *Girod LoanCo, LLC's Motion for Reconsideration or, Alternatively, for New Trial* (the "Motion"). [ECF Doc. 338]. Cella III, LLC filed an Opposition to the Motion, [ECF Doc. 354], and Girod LoanCo, LLC ("Girod") filed a Reply Brief in support of its Motion, [ECF Doc. 356]. For the following reasons, the Court DENIES the Motion.

## BACKGROUND

This Court held a virtual evidentiary hearing on November 10, 2020 (the "Hearing"), to consider *Girod LoanCo, LLC's Application for Allowance of Post-Petition Interest and Attorney's Fees as Oversecured Creditor Pursuant to 11 U.S.C. § 506(b)* (the "§ 506(b) Motion"), [ECF Doc. 209]; the response thereto filed by Cella III, LLC (the "Response"), [ECF Doc. 227]; and the reply brief (the "Reply"), [ECF Doc. 234], filed by Girod LoanCo LLC ("Girod") in support of the § 506(b) Motion. On January 6, 2021, after considering the pleadings, the evidence presented at the Hearing, the record in this case, and applicable law, the Court issued a Memorandum Opinion on January 6, 2021, granting in part and denying in part the relief sought in the § 506(b) Motion. [ECF Doc. 326]. After valuing the collateral securing repayment of the debt owed by the Debtor to Girod, namely the immovable property located at 4531 and 4545 Veterans Boulevard in Metairie, Louisiana (the "Property") and cash generated post-petition by the Debtor's operations (the "Cash Collateral"), the Court found that Girod became oversecured in January 2020. Under

§ 506(b) of the Bankruptcy Code, the Court allowed Girod post-petition interest in the amount of $369,740.58, representing the equity cushion enjoyed by Girod as of November 2020, but denied Girod's request for attorneys' fees based upon the fact that no collateral remained to secure such fees. *Id*. On January 20, 2021, Girod filed the Motion, seeking reconsideration of this Court's award under § 506(b), specifically the valuation of the Property.

Also before the Court are the Debtor's proposed plan of reorganization, as immaterially modified, [ECF Doc. 470], and the competing plan of reorganization filed by Girod, [ECF Doc. 399].

## JURISDICTION AND VENUE

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334. The matters presently before the Court constitute core proceedings that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b)(2)(A), (B) & (O). The venue of the Debtor's chapter 11 case is proper under 28 U.S.C. §§ 1408 and 1409(a).

## DISCUSSION

### A. Standards for Resolving Motions for Reconsideration

The Federal Rules of Civil Procedure do not expressly contemplate a motion for reconsideration of a court order, but if such a motion is filed within fourteen days, it is considered under the standards of a Rule 59(e) Motion To Alter or Amend a Judgment, made applicable to bankruptcy proceedings by Rule 9023 of the Federal Rules of Bankruptcy Procedure. *See In re Baribeau*, 603 B.R. 797, 800 (Bankr. W.D. Tex. 2019). "A Rule 59(e) motion is a motion that calls into question the correctness of a judgment," and "is properly invoked to correct manifest errors of law or fact or to present newly discovered evidence." *In re Transtexas Gas Corp*., 303 F.3d 571, 581 (5th Cir. 2002) (internal quotations and citation omitted).

To prevail on its Motion, Girod has the burden of establishing one of the following: "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice." *In re Benjamin Moore & Co*., 318 F.3d 626, 629 (5th Cir. 2002). "There is a three-prong test generally employed for determining whether 'newly discovered evidence' furnished grounds for a new trial: (1) the probability that the evidence would have changed the outcome of the trial; (2) whether the evidence could have been discovery earlier through the moving party's due diligence; and (3) whether the evidence is merely cumulative or impeaching." *In re Quanalyze Oil & Gas Corp*., 250 B.R. 83, 90 (Bankr. W.D. Tex. 2000) (citations omitted).

A Rule 59 motion "is an extraordinary remedy that should be used sparingly" and "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem, Inc*., 367 F.3d 473, 478–79 (5th Cir. 2004) (internal quotations and citations omitted). This Court retains "considerable discretion" in deciding a motion to reconsider and "must strike the proper balance between . . . (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co. v. Banning Co*., 6 F.3d 350, 355 (5th Cir. 1993).

**B. Girod**

In valuing Girod's secured claim for purposes of determining whether Girod may accrue interest and reasonable attorneys' fees under § 506(b), the Court considered the evidence and valued the "hard" collateral—the Property less cash and receivables—at $7,695,000. Girod did not submit expert valuation of its own; it merely challenged the conclusions of the Debtor's expert and asserted at the Hearing that the valuation would be higher if Mr. Truax [the Debtor's expert] factored the [East Jefferson General Hospital ("EJGH")] lease in his analysis because EJGH is

locked into higher lease payments than a new tenant would pay in the current economic climate. After weighing the evidence, the Court concluded that

> the testimony revealed that countervailing factors exist to justify the lower appraised estimate even if EJGH's higher rents were accounted for, including the pandemic's general, negative effect on the economy and the fact that one of the other tenants on the Property has filed for bankruptcy protection and missed several months of rental payments so far, and there is some uncertainty as to whether that lessee' lease will be assumed in its bankruptcy case. Therefore, the Court accepts Mr. Truax's value of the Property at $7,695,000 and declines to adjust that value to account for the difference between EJGH's $41.25 per square foot rental rate and the $25 per square foot rate used by Mr. Truax to calculate his estimate.

[ECF Doc. 326, at 6].

Girod now asserts that new evidence exists to justify this Court's reconsideration of its valuation of the Debtor's hard collateral. Specifically, Girod states that Hertz, the "uncertain" tenant, assumed its lease in its bankruptcy case after the evidentiary hearing on Girod's § 506(b) application, but before the Court issued its opinion. That assumption, Girod asserts, means that the Debtor will not have to expend resources to obtain another tenant because Hertz "has the financial wherewithal to meet all future payment obligations." Mem. in Support, at 6. Girod further contends that Hertz's lease assumption "also eliminates the uncertainty brought on by the pandemic," assuming that "COVID only affects the Debtor to the extent it needs a new tenant." Mem. in Support, at 6–8. Girod spends the rest of its brief altering the Debtor's expert's model, hypothesizing what it would reveal had the expert considered Hertz's assumption of its lease, essentially attempting to re-litigate the testimony given by the Debtor's valuation expert, Michael Truax..

The Court finds that the Hertz lease assumption does not constitute newly discovered evidence today as it would not have changed the Court's valuation. *In re Quanalyze Oil & Gas Corp.*, 250 B.R. at 90. The Court accepted Truax's **unrefuted** opinions in valuing the hard

collateral. Girod had "the ultimate burden to prove by a preponderance of the evidence its entitlement to postpetition interest, that is, that its claim was oversecured, to what exent, and for what period of time." *Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans ltd. P'ship)*, 116 F.3d 790, 798 (5th Cir. 1997). Girod chose not to submit any valuation evidence of its own, yet complains when the Court evaluates the evidence and reaches a conclusion that may not advantage Girod.

Nevertheless, the Court did capture the value of the rents collected post-petition by the tenants of the Debtor in its valuation of the Cash Collateral. The evidence showed that the Debtor's starting cash position on the petition date was $1,298.00. [ECF Doc. 326, at 9 (citing the Debtor's Aug. 2019 Monthly Operating Report ("MOR")]. As shown by the exhibit attached to the Court's Memorandum Opinion, and after crediting Girod with the two $40,000 adequate protection payments it received, the Court determined that Girod's collateral position improved by the increase in accumulated cash; hence, Girod became oversecured in January 2020. [ECF Doc. 326, at 9 & Ex. 1]. Thus, the Court found that, pursuant to § 506(b), "Girod is entitled to accrue non-default interest starting in January 2020, the point in time when Girod became oversecured, and **continuing through a plan's confirmation or its effective date**, whichever is later, to be calculated per the terms of the loan documents"—up to the point where the post-petition interest and/or attorneys' fees exceed the value of the collateral. [ECF Doc. 326, at 9 (emphasis added)].

A plan has not been confirmed in this case yet. Extending the analysis of Girod's equity cushion through September 2021, the date of the latest MOR filed by the Debtor, [ECF Doc. 505], Girod has remained oversecured to date and has accrued non-default interest up to the value of the collateral. *See* Ex. 1. Again, applying a straightforward 5.5% rate on just the principal due on the three notes, the Court can infer that Girod's interest from January 2020 through September 2021

would be at least $33,000 per month or $693,000.[1] That amount exceeds the largest equity cushion that Girod has enjoyed thus far—$547,915.58—so any accrued post-petition interest and reasonable attorneys' fees that exceed that amount are not recoverable because no collateral exists to secure such interest and fees. *See In re Croatan Surf Club, LLC*, No. 11-0194-8m 2012 WL 190386, at *6 (Bankr. E.D.N.C. May 25, 2012). What remains true is that this Court "can fairly conclude that [Girod's] liens encumber the Debtors' cash and that, at any point in time, [Girod's] claim is greater than the value of [its] collateral, or, with accrued interest and added fees, the claim exhausts the collateral value at all relevant times during the bankruptcy proceedings." *In re Geijsel*, 480 B.R. 238, 269 n.25 (Bankr. S.D. Tex. 2012).

**CONCLUSION**

For the foregoing reasons and in the interests of finality in resolving Girod's § 506(b) motion, the Court DENIES *Girod LoanCo, LLC's Motion for Reconsideration or, Alternatively, for New Trial,* [ECF Doc. 338].

New Orleans, Louisiana, this 26th day of October 2020.

MEREDITH S. GRABILL
UNITED STATES BANKRUPCY JUDGE

---

[1] As stated in the Court's Memorandum Opinion, the principal amounts due on the three notes are as follows: (i) account -10251, is $6,015,929.94; (ii) account -10252 is $1,626,749.94; and (iii) account -10253 is $47,854.81. [ECF Doc. 326 (citing Proof of Claim 4-2)].

**EXHIBIT 1**

| Month | Value of Property | Accumulated Cash at End of Month | Collateral Value at End of Month | Adequate Protection Payments | Claim Balance | Equity Cushion |
|---|---|---|---|---|---|---|
| June 2019 | | $1,298 | $1,298 | $0 | $7,750,751.42 | ($7,749,453.42) |
| July 2019 | | $17,054 | $17,054 | $20,000 | $7,730,751.42 | ($7,713,697.42) |
| Aug. 2019 | | $27,285 | $27,285 | $20,000 | $7,710,751.42 | ($7,683,466.42) |
| Sept. 2019 | | $85,575 | $85,575 | $0 | $7,710,751.42 | ($7,625,176.42) |
| Oct. 2019 | | $141,027 | $141,027 | $0 | $7,710,751.42 | ($7,569,724.42) |
| Nov. 2019 | | $123,347 | $123,347 | $0 | $7,710,751.42 | ($7,587,404.42) |
| Dec. 2019 | | $79,564 | $79,564 | $0 | $7,710,751.42 | ($7,631,187.42) |
| Jan. 2020 | $7,695,000 | $130,200 | $7,825,200 | $0 | $7,710,751.42 | $114,448.58 |
| Feb. 2020 | $7,695,000 | $179,190 | $7,874,190 | $0 | $7,710,751.42 | $163,438.58 |
| Mar. 2020 | $7,695,000 | $205,687 | $7,900,687 | $0 | $7,710,751.42 | $189,935.58 |
| Apr. 2020 | $7,695,000 | $166,549 | $7,861,549 | $0 | $7,710,751.42 | $150,797.58 |
| May 2020 | $7,695,000 | $204,918 | $7,899,918 | $0 | $7,710,751.42 | $189,166.58 |
| June 2020 | $7,695,000 | $260,971 | $7,955,971 | $0 | $7,710,751.42 | $245,219.58 |
| July 2020 | $7,695,000 | $327,564 | $8,022,564 | $0 | $7,710,751.42 | $311,812.58 |
| Aug. 2020 | $7,695,000 | $370,107 | $8,065,107 | $0 | $7,710,751.42 | $354,355.58 |
| Sept. 2020 | $7,695,000 | $276,430 | $7,971,430 | $0 | $7,710,751.42 | $260,678.58 |
| Oct. 2020 | $7,695,000 | $329,997 | $8,024,997 | $0 | $7,710,751.42 | $314,245.58 |
| Nov. 2020 | $7,695,000 | $385,492 | $8,080,492 | $0 | $7,710,751.42 | $369,740.58 |
| Dec. 2020 | $7,695,000 | $145,087 | $7,840,087 | $0 | $7,710,751.42 | $129,335.58 |
| Jan. 2021 | $7,695,000 | $179,591 | $7,874,591 | $0 | $7,710,751.42 | $163,839.58 |
| Feb. 2021 | $7,695,000 | $247,576 | $7,942,576 | $0 | $7,710,751.42 | $231,824.58 |
| Mar. 2021 | $7,695,000 | $282,574 | $7,977,574 | $0 | $7,710,751.42 | $266,822.58 |
| Apr. 2021 | $7,695,000 | $352,446 | $8,047,446 | $0 | $7,710,751.42 | $336,694.58 |
| May 2021 | $7,695,000 | $398,534 | $8,093,534 | $0 | $7,710,751.42 | $382,782.58 |
| June 2021 | $7,695,000 | $397,739 | $8,092,739 | $0 | $7,710,751.42 | $381,987.58 |
| July 2021 | $7,695,000 | $454,365 | $8,149,365 | $0 | $7,710,751.42 | $438,613.58 |
| Aug. 2021 | $7,695,000 | $505,379 | $8,200,379 | $0 | $7,710,751.42 | $489,627.58 |
| Sept. 2021 | $7,695,000 | $563,667 | $8,258,667 | $0 | $7,710,751.42 | $547,915.58 |