UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § § § | CASE NO: 19-11528 |
| CELLA III, LLC, | § § | CHAPTER 11 |
| DEBTOR. | § § § | SECTION "A" |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the *Seventh and Final Application for Attorneys' Fees and Reimbursement of Out-of-Pocket Expenses* (the "Fee Application"), filed by Leo D. Congeni and the Congeni Law Firm, LLC ("Congeni"), [ECF Doc. 583], through which Congeni seeks allowance and final approval of $196,846.00 in fees and $7,611.32 in costs associated with its representation of the Debtor in this matter for the period of June 5, 2019 through January 28, 2022 (including $11,713.50 in unbilled fees and $276.21 in unbilled expenses incurred between October 28, 2021 and January 38, 2022). The Office of the United States Trustee ("UST") filed an objection to the Fee Application, [ECF Doc. 589], as did the Debtor through its new counsel, [ECF Doc. 591]. The Court granted leave for Congeni to file a reply brief in support of the Fee Application. [ECF Doc. 593]. The Court heard oral argument on the Fee Application and the objections on February 23, 2022, and placed the matter under advisement. [ECF Doc. 597]. The Debtor withdrew its objection on July 15, 2022, [ECF Doc. 627], leaving the UST's objection as the sole objection to the Fee Application.

Having considered the record in its entirety, the Fee Application, the UST's Opposition, the Reply Brief, the arguments of the parties, and applicable law, the Court makes the following findings.

1

## JURISDICTION AND VENUE

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334. The matters presently before the Court constitute core proceedings that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b).

## FINDINGS OF FACT

On June 5, 2019, the Debtor filed a voluntary chapter 11 case in this District. The Court approved Congeni's employment application under 11 U.S.C. § 327(a) on an interim basis on June 14, 2019, [ECF Doc. 2], and on a final basis on July 24, 2019, [ECF Doc. 47]. On September 8, 2019, the Debtor filed its first plan of reorganization within the 120-day initial exclusivity period. [ECF Doc. 64]. After several extensions of the time to solicit support for the Debtor's plan, [ECF Docs. 124, 137 & 158], the Debtor filed an amended plan on March 16, 2020, [ECF Doc. 159]. On June 1, 2020, the Court approved the Debtor's disclosure statement, and set August 17, 2020, as the date for the hearing on confirmation of the amended plan. [ECF Doc. 191].

The hearing on plan confirmation was continued multiple times at the request of the parties in this matter. [ECF Docs. 197, 215, 243]. On November 17, 2020, and for the reasons stated in the Order, the Court denied the Debtor's motion to extend exclusivity, but granted the Debtor's request to continue the hearing on confirmation of the Debtor's amended plan over an objection by the Debtor's secured lender, Girod LoanCo, LLC ("Girod"), and reset the plan confirmation hearing date to January 7, 2021. [ECF Doc. 277]. On December 10, 2020, Girod, which held a first-position lien on all of the Debtor's assets, filed its own competing disclosure statement and plan of reorganization. [ECF. Doc. 293]. After a two-day evidentiary hearing on February 24 and 26, 2021, the Court took the matters under advisement. [ECF Doc. 416].

2

Although the evidence taken regarding the competing plans filed by the Debtor and Girod had been closed and the matters were under advisement, , the Debtor moved on August 24, 2021, to amend its plan with what it deemed were immaterial modifications. [ECF Doc. 470 & 471]. Meanwhile, on September 15, 2021, Girod supplemented the bankruptcy record with a state court's order denying the motion of certain insiders and affiliates of the Debtor for a new trial; Girod had recently obtained money judgments against those insiders and affiliates in the sum of several million dollars. [ECF Doc. 484 & 492]. On October 29, 2021, Girod filed a motion seeking various alternative forms of relief—including the appointment of a chapter 11 trustee—based upon its assertion that the sole member of the Debtor had encumbered property of the estate without Court authority (the "Trustee Motion"). [ECF Doc. 520]. Specifically, Girod pointed to the sole member's execution of an appeal bond, binding the Debtor as a surety for the judgment debts of the sole member and a non-Debtor affiliate in the amount of $11,337,640.30. *See id*. On November 5, 2021, the Court scheduled an evidentiary hearing on the Trustee Motion for December 14, 2021, which was later continued to January 11, 2022. [ECF Docs. 526 & 543]. Before the hearing on the Trustee Motion, Girod and the Debtor, represented by new counsel, announced a global settlement of all matters between the parties at a status conference on January 5, 2022.

Over the course of this case, Congeni's fees have been awarded on an interim basis through October 27, 2021. [ECF Docs. 116, 177, 236, 306, 443 & 530]. In addition to seeking final approval of those fees, Congeni seeks final approval on an additional $11,713.50 in fees and $276.21 in expenses for the period between October 28, 2021 and January 28, 2022 (the "Last Billing Period"). *See* Fee Application, ¶ 7.

## CONCLUSIONS OF LAW

A.     **Standards of Review for Fee Applications**

Section 327 of the Bankruptcy Code allows a debtor-in-possession to employ one or more attorneys, with the Court's approval, to represent or assist the debtor-in-possession in carrying out its duties under the Code. *See* 11 U.S.C. § 327(a). Section 330 of the Bankruptcy Code permits an award of compensation to a professional person employed under 11 U.S.C. § 327 as long as the nature, extent, and value of services performed are reasonable and necessary and rendered toward the completion of the case. *See* 11 U.S.C. § 330(a). Section 330 provides a nonexclusive list of factors the Court must consider in determining the reasonableness of the compensation requested, including:

    (A) the time spent on such services;

    (B) the rates charged for such services;

    (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

    (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

    (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3). This Court "has an independent duty to review the reasonableness of a professional's fees, even when the [debtor-in-possession] who employed the professional does not object." *In re Squaglia*, No. 04-12017, 2008 WL 3925223, at *6 (Bankr. E.D. Cal. Aug. 27, 2008); *see also In re Ridgeway,* No. 16-10643, 2018 WL 3630156, at *11 (Bankr. E.D. La. July 27, 2018);

*In re Brown*, 371 B.R. 486, 499 (Bankr. N.D. Okla. 2007). The necessity and reasonableness of legal services, however, is determined at the time they were rendered. *See In re Woerner*, 783 F.3d 266, 255 (5th Cir. 2015).

The Fifth Circuit uses a "lodestar" method for determining attorneys' fees. *See Shipes v. Trinity Indus.*, 987 F.2d 311, 319–20 (5th Cir. 1993). To tally the lodestar number, courts multiply "the number of hours an attorney would reasonably spend for the same type of work by the prevailing hourly rate in the community." *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 517 B.R. 724, 731 (Bankr. S.D. Tex. 2014) (citing *Shipes*, 987 F.2d at 319). A court may then adjust the lodestar number up or down depending upon the presence or absence of the twelve factors identified in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974) (assessing reasonableness of attorneys' fees under § 706(k) of Title VII of the Civil Rights Act of 1964), *abrogated on other grounds, Blanchard v. Bergeron*, 489 U.S. 87 (1989). *See In re Cahill,* 428 F.3d 536, 539–40 (5th Cir. 2005) (applying the *Johnson* factors in a bankruptcy context); *In re Harris-Nutall*, 572 B.R. 184, 197 (Bankr. N.D. Tex. 2017) (same); *In re New Town Dev. Grp., L.L.C.*, No. 09-10029, 2010 WL 1451480 (Bankr. M.D. La. Apr. 9, 2010) (same); *In re Energy Partners, Ltd*., 422 B.R. 68 (Bankr. S.D. Tex. 2009) (same).

The *Johnson* factors include: (1) time and labor required; (2) novelty and difficulty of the issues; (3) skill required to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) award in similar cases. *See* 488 F.2d at 717–19. But "[t]he lodestar method is presumed to account for four of the twelve *Johnson* factors—

the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from litigation." *In re Rodriguez*, 517 B.R. at 730. The Fifth Circuit affords courts considerable discretion in awarding attorneys' fees. *See Transamerican Natural Gas Corp. v. Zapata P'ship, Ltd. (In re Fender)*, 12 F.3d 480, 487 (5th Cir. 1994).

B. The UST's Objections

The UST objects to two discrete categories of time entries listed by Congeni, asserting that the services performed were not reasonably likely to benefit the debtor's estate nor were necessary to the administration of the estate.

1. *Fees requested for amendments to a plan of reorganization under submission and a motion to pay down Girod's secured debt*

The Trustee Motion was filed by Girod on October 29, 2022. The UST objects to fees in the amount of $3,192.00, representing 11.2 hours at $285 per hour for services provided during the Last Billing Period between October 28, 2021 to November 9, 2021, related to the Debtor's alleged immaterial modifications of a plan that was under submission at the time the services were provided, as well as services related to a motion styled as a *Consent Motion To Pay Down Secured Debt In Aid of Confirmation of Amended Chapter 11 Plan of Reorganization Filed by Cella III, LLC on August 24, 2021* and filed on November 1, 2021. [ECF Doc. 589, ¶ 10 (citing ECF Docs. 470 & 523)]. The Debtor's filing of the "consent" motion to pay down secured debt drew an objection from Girod. [ECF Doc. 524]. Girod's main objection was that the proposed payment of $200,000 of its own cash collateral—ostensibly to be made in aid of a plan that had yet to be confirmed—could not be decided before a ruling on the Trustee Motion characterizing the appeal bond transaction could be made. *See id*.

6

The Court has reviewed the invoice attached to the Fee Application and agrees with the UST. Viewing the necessity and reasonableness of the services as described on the invoices as of the time they were rendered as required by *In re Woerner*, the Court cannot conclude that the services were necessary, reasonable, and rendered toward the completion of the case. Girod's allegation raised in the Trustee Motion that the Debtor's principal had executed a self-serving appeal bond obligating the Debtor to guarantee the judgment debt against him and another non-Debtor affiliate was not in dispute; rather, the immediate issue at hand was whether that transaction would be ratified post hoc by the Court and, if so, what legal ramifications it would have vis-à-vis Girod's claim against the estate in the bankruptcy case. As an oversecured creditor, the Court had already awarded Girod post-petition interest under 11 U.S.C. § 506(b) up to the value of its collateral, which encompassed the Debtor's sole piece of immovable property and cash collateral generated from rents. [ECF Docs. 326 & 510]. If the Court ratified the Debtor's post-petition incurrence of debt, Girod alleged that it had the right to a significant administrative expense claim against the estate, which would have certainly negatively impacted the feasibility of the Debtor's plan under submission. Girod alternatively requested the appointment of a chapter 11 trustee, asserting that the Debtor's principal's self-serving and unauthorized incurrence of new estate debt warranted that drastic step.

Given that procedural posture, any amendments to the Debtor's plan of reorganization—that was under submission—and the "consent" motion to pay Girod $200,000 of its own cash collateral were fruitless endeavors. Counsel would have known this. Thus, the Court sustains the UST's objections and disallows Congeni's requested fees in the amount of $3,192.00, representing 11.2 hours at $285 per hour for services provided during the Last Billing Period related to the

Debtor's alleged immaterial modifications of a plan and the proposed motion to pay down Girod's secured debt.

2. *Fees related to discovery propounded against the UST*

The UST also objects to Congeni's requested fees of $1,282.50, representing 4.5 hours of legal services provided at $285 per hour.[1] A review of the invoice attached to the Motion indicates that the services relate to discovery propounded on the UST and defense of a motion for protective order filed by the UST. The UST asserts that the services rendered on November 15, 2021 (0.50), December 23, 2021 (0.20), December 27, 2021 (2.2), and December 28, 2021 (1.6) were not necessary, reasonable, and rendered toward the completion of the case because (1) Congeni failed to comply with the regulations imposed by the Department of Justice named after *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) that govern discovery propounded against the UST, despite being made aware of those regulations; (2) the discovery sought by Congeni pertained to a separate dismissed bankruptcy case of an affiliate and was not calculated to lead to discoverable evidence in connection with the Trustee Motion filed by Girod; and (3) the hearing on the protective order filed by the UST occurred after settlement negotiations were already underway between Girod and the Debtor's new counsel.

At the hearing on the protective order filed by the UST on December 28, 2021, this Court reviewed each of the discovery requests propounded on the UST by Congeni and found that (i) some requests pertained to an affiliated case that had been dismissed months earlier, leaving the Court without jurisdiction over the matter; (ii) some requests were already addressed and governed by the Scheduling Order issued in connection with the Trustee Motion; and (iii) even if Congeni had complied with *Touhy* regulations—and he had not—the remaining requests were overbroad

---

[1] In its opposition, the UST identifies six contested billing entries, which add up to 4.5 hours of services, not the 3.3 hours stated in the opposition. [ECF Doc. 589, ¶ 10(b)].

and not tailored to lead to discoverable evidence on the issues implicated by the Trustee Motion. In short, however, none of the discovery requests were permissible requests because Congeni made no effort to comply first with the *Touhy* regulations, even though he had been made aware of the need to do so by the UST. *See* Hr'g Min. 14:01:44–:32:50 (Dec. 28, 2021). The Court granted the UST's motion for protective order. [ECF Doc. 554].

For those reasons, the Court cannot conclude that the services related to the discovery propounded upon the UST were necessary, reasonable, and rendered toward the completion of the case. The Court sustains the UST's objections and disallows Congeni's requested fees in the amount of $1,282.50, representing 4.5 hours of legal services provided at $285 per hour on November 15, 2021, December 23, 2021, December 27, 2021, and December 28, 2021.

## CONCLUSION

For the reasons stated herein,

**IT IS ORDERED** that the Fee Application, requesting allowance and final approval of $196,846.00 in fees and $7,611.32 in costs associated with its representation of the Debtor in this matter for the period of June 5, 2019 through January 28, 2022 (including $11,713.50 in unbilled fees and $276.21 in unbilled expenses incurred during the Last Billing Period), is **ALLOWED IN PART** and **DISALLOWED IN PART**.

**IT IS FURTHER ORDERED** that all of Congeni's attorneys' fees and costs that have been approved on an interim basis to date are ALLOWED and APPROVED on a final basis.

**IT IS FURTHER ORDERED** that the Fee Application is DISALLOWED to the extent it requests fees in the Last Billing Period in the amount of $4,474.50.

**IT IS FURTHER ORDERED** that the Fee Application is ALLOWED and APPROVED on a final basis to the extent that it requests fees in the amount of $7,239.00 and $276.21 for actual and necessary expenses incurred during the Last Billing Period, for a total allowed award of $7,515.21, which may be paid immediately upon entry of this Order.

New Orleans, Louisiana, July 20, 2022.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE